Texas Brewing Company v. J. G. Mallette, Trustee, et al.

Decided March 1, 1902.

**1.—Fraudulent Conveyance—Creditors—Unrecorded Mortgage—Bankruptcy.**

Where a merchant executed a mortgage on part of his business property under an agreement that it should not be placed on record, so that he might continue to obtain credit from others, and the mortgage was withheld from record, the merchant obtaining credit meanwhile from parties who were ignorant of it, until he failed and went into bankruptcy, the lien of the mortgage could not be enforced against the trustee in bankruptcy.

**2.—Same—Bankrupt Law—Four Months Clause—Trustee's Powers.**

Since the bankrupt law, by section 70a, vests the bankrupt's title in the trustee as of the date he was adjudged a bankrupt to "property transferred by him in fraud of his creditors," and the definition of "transfer" given in section 1, subdivision 25, expressly includes a mortgage, the trustee has the same power as an attaching creditor to disregard a fraudulent mortgage, and this extends to mortgages made more than four months before bankruptcy the existence of which has been fraudulently concealed from creditors.

Appeal from Tarrant. Tried below before Hon. M. E. Smith.

*C. Von Carlowitz,* for appellant.

*John W. Wray* and *Morgan Bryan,* for appellees.

STEPHENS, Associate Justice.—The facts of this case are thus correctly stated in appellant's brief: "September 7, 1900, W. H. Ward executed and delivered to the Texas Brewing Company a chattel deed of trust, covering his saloon and restaurant fixtures, for the purpose of securing the Texas Brewing Company in the payment of notes, dated February 13, 1900, aggregating $750; also notes dated September 7, 1900, being for $165.75. The notes aggregating $750 and $500, respectively, were executed for money loaned by appellant to W. H. Ward; the note for $165.75, however, in settlement of an open account. On February 25, 1901, W. H. Ward executed and delivered a chattel deed of trust to C. T. Prewitt as trustee for all his creditors, conveying therein his saloon and restaurant fixtures, heretofore incumbered to secure appellant, and his stock of goods. This deed of trust was filed for reg-

istration in the county clerk's office on February 25, 1901. Subsequent to the filing thereof, but on the same day, to wit, February 25, 1901, appellant caused the chattel deed of trust executed in its favor to be filed for record.

On March 11, 1901, W. H. Ward was adjudged a bankrupt by the United States District Court for the Northern District of Texas, upon petition filed by some of said Ward's creditors, filed on the 1st day of March, 1901, and J. G. Mallette was nominated and appointed as trustee for the estate of W. H. Ward, a bankrupt, and has been acting as such, and is now acting as such.

"That said J. G. Mallette, as such trustee, sold the fixtures embraced in the chattel mortgage given to appellant prior to June 1, 1901, free of all incumbrances, for $1626.85, but refused to turn over the proceeds of such sale to the appellant. Appellant therefore instituted suit in the District Court of Tarrant County, Seventeenth Judicial District, on the 19th day of August, 1901, asking in its petition to have the court to ascertain and determine the amount of the indebtedness due to it by W. H. Ward, and that its lien be foreclosed upon the funds in the hands of said J. G. Mallette, trustee, and against the said J. G. Mallette, trustee.

"The case was tried upon an agreement that the facts alleged in plaintiff's petition and defendant Mallette's answer were true. The court in rendering judgment determined the indebtedness of W. H. Ward to appellant at $1855.62, enforcible in bankruptcy against the estate of W. H. Ward, but denied appellant the right to foreclose its lien upon the funds in the hands of said J. G. Mallette. Conclusions of law and fact were filed. Appellant excepted to the judgment so far as it denies the right to foreclose its lien against J. G. Mallette, gave notice of appeal, and filed its bond October 24, 1901."

To which we may add that the answer mentioned in this statement, after alleging that W. H. Ward was indebted in the sum of $20,000, and insolvent at the date of the mortgage to appellant, which insolvency was unknown to the majority of his creditors, and that each of his creditors continued to do business with him from the date of the mortgage to his bankruptcy in the usual course, selling him merchandise on a credit, contained the following:

"3a. This defendant avers that they sold him their merchandise altogether on credit, receiving some payments along, and that the indebtedness of said creditors from the date of the execution of the said mortgage up to the time of the act of bankruptcy amount to the sum of $10,000; that they, and each of them, sold the said Ward on the faith and on the reliance of the fact that all of his property was clear and unincumbered and subject to the payment of his debts, and without any knowledge soever that the plaintiff had obtained a lien on the property described in its mortgage and was secretly holding it in its possession without registration; that said creditors, nor either of them, would have sold the merchandise they did sell, or any merchandise to the said Ward

on a credit had they been cognizant of the said mortgage and the attempted creation of a lien on the said property.

"4.   This defendant further says that he, as the trustee of the creditors of the said estate and as their representative, and at their request, avers the above matters, and further, that the said instrument was executed by the said Ward upon an agreement made with Zane Cetti, the president of the plaintiff corporation, that the instrument should not go of record, that it should be kept in the possession of the plaintiff as an evidence of the good faith of the defendant Ward that he would pay the indebtedness it was intended to secure; that it was simply given by the defendant Ward at the special request of the said Cetti, who desired, as he then stated, to make a showing to his directory, but, as aforesaid, upon the express condition that the same should not be recorded until the plaintiff should deem it expedient."

It was further alleged that the mortgage so executed and withheld from record by appellant operated a fraud upon the remaining creditors, "who advanced the said Ward credit upon the faith of the fact that his property was clear and unincumbered," which they would not have done had they known of "the secret trust."

The conclusion of the district judge on the admitted facts was thus stated by him: "What was the manifest purpose, intent and effect of the transaction between Ward and the plaintiff? It was evidently in their contemplation that to record this mortgage would seriously impair Ward's credit, and to withhold it from record would enable Ward to continue in business and to purchase goods that he otherwise could not have purchased, and in case Ward should get into financial difficulties it would be expedient to file the mortgage for registration, and thereby secure an advantage over creditors deluded by the false situation thus created. And this purpose was carried out to the letter. Ward did continue in business, buying goods on a credit from the creditors represented in this suit, which goods he could not have purchased had it not been for the fact of the false situation created by the express contract not to record and failure to record this chattel mortgage. I believe this was legal fraud on these creditors; that it was intended to mislead and did actually mislead them to their injury, and that therefore the plaintiff in this case is in equity and good conscience estopped from asserting a superior lien to the property as against the creditors here represented. I have examined the authorities and believe this holding is amply sustained."

Numerous cases are cited in appellees' brief to sustain this conclusion, to which may be added the following: Bunch v. Schaefer (Ark.), 48 S. W. Rep., 1071; Gentry v. Field (Mo.), 45 S. W. Rep., 286; State v. O'Neil (Mo.), 52 S. W. Rep., 240; Moore v. Wood (Tenn.), 61 S. W. Rep., 1063.   On the other hand, the decision of our Supreme Court in Bicocchi v. Casey-Swasey Company, 42 Southwestern Reporter, 968, seems mainly relied on by appellant as authority to the contrary. That this decision is not in accord with those of other courts the writer at

least is free to admit, and he can but think the Supreme Court misapprehended the true issue in that case as well as the ground upon which it was disposed of in this court. The case, though somewhat peculiar, was a simple one. Bicocchi purchased a lot in Fort Worth and, anticipating proceedings for divorce with consequent division of property, caused the deed to be made to Mazza, his brother-in-law, who, in furtherance of the purpose of Bicocchi to thus secrete the title, and evidently with his knowledge, not only treated it as his own for several years but also obtained credit on the faith of its being his own. Becoming insolvent and about to fail in business, he conveyed it to Bicocchi to keep his (Mazza's) creditors, who had sold him merchandise on the faith of its being his property, from seizing it. These creditors caused it to be attached, claiming that the conveyance to Bicocchi was fraudulent and void as to them, and prevailed both in the trial and this court. 40 S. W. Rep., 209, where the case is more fully stated. But on writ of error to the Supreme Court the conveyance so made was upheld upon the ground that Mazza was under a moral obligation to Bicocchi to make it. The view of this court was, and of the writer at least still is, that Bicocchi was estopped from asserting such moral obligation as against attaching creditors who had thus been deceived to their prejudice. Bicocchi was the beneficiary of the fraudulent scheme, and the representations made by Mazza in pursuance thereof to the commercial world in general and to his creditors in particular, that he was the owner of this property and entitled to credit on the faith of it, were but the representations of Bicocchi himself. These representations were not only calculated to deceive, but did mislead, the creditors of Mazza and cause them to change their position for the worse, which should be held, on familiar principles of equity, to work an estoppel; that is, to preclude proof of or reliance upon the facts out of which the moral obligation arose. The creditors had the right to treat the property as both Mazza and Bicocchi had induced them to consider it, that is, as the property of Mazza.

The writer, however, has neither the time nor the inclination to review the learned opinion of Mr. Justice Brown overruling these views, but feels justified in thus briefly restating the position originally taken by this court, in view of the erroneous interpretation given it by the Supreme Court in that opinion.

Speaking now for the court, and without questioning the authority of the Bicocchi-Mazza decision relied on, we must nevertheless hold it to be inapplicable to this case, for, as before seen, it turned upon a question of moral obligation, which does not appear in any aspect of the case before us. From the authorities above cited and referred to we see no reason to doubt the proposition, that if the creditors of Ward had by attachment seized the bar and restaurant fixtures covered by appellant's secret mortgage, even after it was registered, it would have been void as to them under the law against fraudulent conveyances, since the withholding of it from record in pursuance of the agreement was not only calculated to deceive and mislead the creditors to their prejudice, but

actually had that effect in this instance, a result which appellant must be held to have contemplated. But the question yet remains, may the trustee in bankruptcy avoid the fraudulent mortgage upon this ground, as attaching creditors might have done? He is of course not a creditor, but is treated in the main as the representative of the debtor. He does, however, represent the creditors in proceedings to annul fraudulent transfers. Section 70a of the bankrupt law itself vests in the trustee the title of the bankrupt, as of the date he was adjudged a bankrupt, to "(4) property transferred by him in fraud of his creditors," and the definition of "transfer" given in section 1, subdivision 25, expressly includes a mortgage. He is thus clothed with all the power of an attaching creditor to strike down or rather disregard a fraudulent transfer, in support of which conclusion numerous authorities might be cited, if any were needed. This applies to fraudulent transfers made or attempted, as in this case, more than four months prior to the filing of the petition in bankruptcy. Such was the construction given similar provision in the bankrupt act of 1867. Knowlton v. Moseley, 105 Mass., 136; Collier on Bankruptcy, p. 438.

If, however, it should be held that the broad terms of section 70a are restricted by section 67e to fraudulent conveyances and incumbrances made or given within the four months, the mortgage in question was not subject to attack unless its intentional concealment brought it within the scope of the present bankrupt act. But we can see no good reason why the rule which takes a case out of the operation of the statute of limitation where the cause of action is fraudulently concealed should not apply in the construction of the four months clause of the bankrupt law. Rosenthal v. Walker, 111 U. S., 185. While the mortgage was in form executed more than four months prior to the petition in bankruptcy, it was intended more as a preparation for future emergency than as the creation of a lien from that date. It was at best a suppressed mortgage until the day the act of bankruptcy was committed, when it was deposited for registration, and, as before seen, it was withheld from record under circumstances rendering it fraudulent and void as to creditors affected injuriously and fixing liens on the property by legal process. To be allowed to spring a secret mortgage on the trustee in bankruptcy when it is too late for either the trustee under the terms of the bankrupt law or the creditors by attachment to attack it for fraud, and ask a court of equity to enforce such a lien against the estate of the bankrupt because it bears date more than four months prior to the filing of the petition in bankruptcy, involves a proposition which calls for the citation of authority clearly in point; in the absence of which we would be disposed to hold against it.

As to whether under section 67a it should be held that the mortgage was void for not being forthwith registered, finding the decisions in hopeless conflict, we will not undertake to determine.

It is insisted in behalf of appellee that if the validity of appellant's

mortgage be conceded, it was yet not entitled to maintain a suit in the State court to foreclose or establish a lien on funds in the custody of the bankrupt court, and we are disposed to concur with him in this; for it seems to be sustained by the decision in White v. Schloerb, 178 United States, 542, which does not conflict with the decision by the same court in the leading case of Bardes v. Bank, 178 United States, 524. There is a well defined distinction between a suit to foreclose a mortgage on property in the possession of a trustee in bankruptcy, which may be brought in the proper State or Federal circuit court, and a suit to foreclose a mortgage on the proceeds arising from a sale of such property under order of the bankrupt court and remaining in its custody.

But as this question was not raised in the trial court, we prefer to treat the case as it was there treated and affirm the judgment on the merits, since in either case the practical result would be the same.

Affirmed.

Writ of error refused.

Hunter, Associate Justice, did not sit in this case.